USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/4/15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

**NORMAN SEABROOK, as President of the Correction Officers' Benevolent Association, THE CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, and THE CORRECTION OFFICERS' BENEVOLENT ASSOCIATION SECURITY BENEFITS FUND,**

               **Plaintiffs,**

               **- against -**

**BARACK OBAMA, in his official capacity as President of the United States of America, et al.,**

               **Defendants.**

               <u>**OPINION AND ORDER**</u>

               **14 Civ. 4431 (SAS)**

------------------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Plaintiffs here — collectively, the Correction Officers' Benevolent Association ("COBA"), a public union of correctional officers in New York City — bring suit to challenge a determination by Health and Human Services ("HHS") that COBA's prescription drug benefit fund ("COBA Fund"), which provides union members with financial support for, *inter alia*, prescription drug costs, is subject to the prohibition on lifetime and annual limits set forth in the Patient

1

Protection and Affordable Care Act ("ACA").  In essence, COBA argues that the purpose of the Fund is to *supplement* ordinary health insurance — to defray the out-of-pocket expenses that members incur under their existing insurance plans, which are provided by the City, not by the union.  Because the role of the Fund is supplementary coverage, not primary coverage, COBA believes that the policy rationales underpinning the ACA's prohibition on lifetime and annual limits are inapplicable to the Fund — and that the Fund, therefore, should not be subject to that prohibition.  Since 2010, COBA began pleading its case to HHS, a process that culminated in a letter, dated March 20, 2015, outlining HHS's conclusion — joined by the Department of Labor and the Department of the Treasury — that the COBA Fund is "[not] exempt from the ACA's [prohibition on annual limits]."[1]

COBA now asks this Court to overturn HHS's determination as an impermissible construction of the ACA, or, in the alternative, as a violation of the Tenth Amendment to the United States Constitution.  In response, the Government argues that HHS's determination is entitled to deference, and that COBA's Tenth Amendment challenge fails as a matter of law.  Both sides have cross-moved for

---

[1]     03/20/15 Letter from Samara Lorenz, Acting Director of the Oversight Group of the Center for Consumer Information and Insurance Insight, Department of Health and Human Services, to Norman Seabrook, President of the Correction Officers' Benevolent Association ("Lorenz Letter"), Exhibit ("Ex.") to Administrative Record of the Department of Health and Human Services ("HHS Admin. Record"), at 1.

summary judgment.[2]  For the reasons set forth below, the Government's motion is GRANTED, and COBA's motion is DENIED.

## II.    BACKGROUND

### A.    Statutory Scheme

In 2010, Congress enacted the ACA in an effort to comprehensively reform the nation's health care system.[3]  Among other things, the ACA amended Title XXVII of the Public Health Service Act ("PHSA") to add section 2711, which prohibits group health plans and health insurance issuers offering group or individual plans from imposing lifetime or annual limits on the dollar value of essential health benefits.[4]  The purpose of the prohibition is to protect patients from being "confronted with devastating health costs because they have exhausted their health coverage when faced with a serious medical condition,"[5] as part of a larger

---

[2]      Because no facts are in contention, there is no dispute that summary judgment is appropriate.  *See Residents for Sane Trash Solutions, Inc. v. United States Army Corps of Engr's*, 31 F.  Supp.  3d 571, 586 (S.D.N.Y. 2014) (holding that in cases involving judicial review of agency action — as here — "summary judgment is appropriate, since whether an agency action is supported by the administrative record and consistent with the APA [] is decided as a matter of law").

[3]      *See* Pub. L. No. 111-148.

[4]      *See* 42 U.S.C. § 300gg-91(a)(1).

[5]      Administrative Record of the United States Treasury ("Treasury Record") at 46.

effort to "ensure that more Americans with chronic, long-term, and/or expensive illnesses have access to quality health coverage."[6]

Section 2711's prohibition on lifetime and annual limits for essential health benefits is subject, however, to two important caveats. *First*, the PHSA, even as amended, "shall not be construed to prevent group health plan or health insurance coverage from placing annual or lifetime [] limits on specific covered benefits that are *not* essential health benefits."[7]  In short, coverage caps on essential health benefits are not allowed, whereas caps on non-essential health benefits *are* allowed.  Section 1302 of the ACA defines "essential health benefits" to include, *inter alia*, prescription drugs.[8]  *Second*, pursuant to section 2791(c), the ban on lifetime and annual limits does not apply to "excepted benefits," which encompasses four categories:

>  1.  *Non-health benefits* — Benefits that are not health coverage, such as "accident [] or disability income insurance,"[9] "liability insurance, including general liability insurance and automobile liability

---

[6]  *Id.*

[7]  42 U.S.C. § 300gg-11(b).

[8]  *See id.* § 18022(b)(1)(F).

[9]  *Id.* § 300gg-91(c)(1)(A).

insurance,"[10] "workers' compensation,"[11] "automobile medical payment insurance,"[12] and "coverage for on-site medical clinics."[13]

2.   *Limited excepted benefits* — Benefits that are "offered separately" from a health insurance plan, including "limited scope dental or vision benefits,"[14] "benefits for long-term care, nursing home care, home health care, community-based care, or any combination thereof,"[15] and "other similar, limited benefits as [] specified in regulations."[16]

Pursuant to its authority under the residual clause, which allows for the "specifi[cation]" of "other similar, limited benefits,"[17] HHS has promulgated regulations that include the following types of benefits in this sub-section of "excepted benefits" — flexible spending arrangements that do not exceed five hundred dollars per year,[18] employee assistance programs that "do[] not provide

---

[10]   *Id.* § 300gg-91(c)(1)(C).

[11]   *Id.* § 300gg-91(c)(1)(D).

[12]   *Id.* § 300gg-91(c)(1)(E).

[13]   *Id.* § 300gg-91(c)(1)(G).

[14]   *Id.* § 300gg-91(c)(2)(A).

[15]   *Id.* § 300gg-91(c)(2)(B).

[16]   *Id.* § 300gg-91(c)(2)(C).

[17]   *Id.*

[18]   *See* 26 C.F.R. § 54.9831-1(c)(3)(v)(B) (for a flexible spending arrangement to qualify as a limited excepted benefit for purposes of 42 U.S.C. § 300gg-91(c)(2), "the maximum benefit payable to any participant in the class for a year cannot exceed . . . $500 plus the amount of the participant's salary reduction election").

significant benefits in the nature of medical care" (such as programs related to

substance abuse and mental health counseling),[19] and "wraparound" coverage

(employer-based coverage designed to supplement health plans purchased on state

exchanges).[20]

3.  *Non-coordinated excepted benefits* — Benefits that are offered in an "independent [and] non-coordinated" fashion from health plans,[21] including "coverage [] for a specified disease or illness,"[22] or "hospital indemnity or other fixed indemnity insurance."[23]

4.  *Supplemental excepted benefits* — Benefits that are "offered as [a] separate insurance policy,"[24] and supplemental to, *inter alia*, Medicare.[25]

With respect to these last two categories, HHS has determined that to qualify as a

"non-coordinated excepted benefit" or as a "supplemental excepted benefit," the

benefit in question must be "provided under a separate policy, certificate, or

---

[19]  *Id.* § 54.9831-1(c)(3)(vi).

[20]  *See id*. § 54.9831-1(c)(3)(vii).

[21]  42 U.S.C. § 300gg-91(c)(3).

[22]  *Id.* § 300gg-11(c)(3)(A).

[23]  *Id.* § 300gg-11(c)(3)(B).

[24]  *Id.* § 300gg-11(c)(4).

[25]  *See id.*

contract of insurance."[26]

On March 20, 2015, HHS issued a letter outlining its determination that the COBA Fund does not fall under any of the four categories of excepted benefits. The analysis had two components. *First*, with respect to categories one and two, HHS found that the prescription drug benefit provided by the COBA Fund does not qualify as any of the types of benefits specifically enumerated under the statute and the regulations. *Second*, with respect to categories three and four, HHS found that the prescription drug benefit is not "provided under a separate policy, certificate, or contract of insurance" — and therefore, that it does not satisfy a threshold element of "non-coordinated" or "supplemental" excepted benefits, as articulated in the regulations.

### B.    The COBA Fund[27]

The COBA Fund is a supplemental benefit fund sponsored and

---

[26]    Lorenz Letter at 2, 3. *Accord* 26 C.F.R. § 54.9831-1(c)(4) (outlining the "separate policy certificate, or contract of insurance" requirement with respect to category three); 26 C.F.R. § 54.9831-1(c)(5) (outlining the "separate policy certificate, or contract of insurance" requirement with respect to category four).

[27]    All facts set forth in this section are taken — as appropriate, given the posture of the case — from COBA's own description of the Fund. *See* Memorandum of Law in Opposition to Defendants' Motion For Summary Judgment ("Opp. Mem.") at 2-4. This description also tracks the Government's understanding of the Fund, as outlined in the Administrative Record of the Department of Labor.

managed by COBA, and funded in part by New York City.  It provides union

members with prescription drug coverage, optical benefits, and dental benefits.  It

does not provide members with primary healthcare, such as physician visits and

hospitalization.  The Fund is, in this sense, "supplemental."  It aims to provide

financial support above and beyond that of the members' primary health insurance

plans, which are administered by the City, not by COBA.  Unlike the prescription

drug coverage available through the City's healthcare plans, the Fund's

prescription drug coverage requires no employee contributions.

In order to manage costs, COBA had imposed a $10,000 annual limit

on reimbursement for prescription drugs purchased through the Fund.  The ACA

proscribes this practice.  According to COBA, if it is unable to impose a $10,000

(or similar) annual limit, the Fund faces an acute risk of insolvency, because some

of its members have prescription drug costs that total hundreds of thousands of

dollars.  As the Fund's Administrator put it:

> Even with a limit as low as $10,000, the Fund spends nearly one-
> third of [its budget provided by New York City] on prescription
> drug costs alone.  The Fund cannot remain solvent if it were
> required to raise its annual limits on prescription drug benefits
> from $10,000 to $750,000 . . . Indeed, given that the Fund's
> resources are severely limited . . . [such an] increase in annual
> limits will force the Fund to discontinue or drastically diminish

offering various benefits, including prescription drug coverage.[28]

To stave off this danger, COBA asked HHS to categorize the prescription drug benefit as an "excepted benefit," beyond the reach of the ACA's prohibition on annual limits.

## III.   APPLICABLE LAW

The Administrative Procedure Act ("APA") authorizes judicial review of federal agency action for any person "suffering a legal wrong because of agency action."[29]  A court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."[30]  Needless to say, the "arbitrary and capricious" standard is a high bar to relief.  An agency action is arbitrary and capricious only where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to . . . agency

---

[28]      11/19/10 Letter from Joseph Bracco, Fund Administrator, COBA Security Benefits Fund, to James Mayhew, Office of Consumer Information and Insurance Oversight, Ex. to HHS Admin. Record, at 3.

[29]      5 U.S.C. § 702.

[30]      *Id.* § 706(2)(A).

expertise."[31]

Under the APA, "agency action" also includes the "failure to act."[32] Courts are permitted to "compel agency action" that has been "unlawfully withheld or unreasonably delayed."[33]  Courts may only do so, however, when an agency "failed to take a discrete [] action that it is *required to take*."[34]  Consistent with this principle, no review of agency inaction is available when it "'is committed to agency discretion by law.'"[35]

---

[31]     *Natural Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011). *Accord Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (under the arbitrary and capricious standard, "a reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute").  In assessing the viability of an agency's interpretation, the inquiry is limited to the administrative record compiled and relied on by the agency.  *See Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("Review under [the APA] is narrow, limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (citations omitted).

[32]     5 U.S.C. § 551(13).

[33]     *Id.* § 706(1).

[34]     *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).  *Accord Sharkey v. Quantillo*, 541 F.3d 75, 89 n.13 (2d Cir. 2009) (affirming the standard in *Norton*); *Benzmann v. Whitman*, 523 F.3d 119, 130 (2d Cir. 2008) (same).

[35]     *Johnson*, 461 F.3d at 171 (quoting 5 U.S.C. § 701(a)(2)).

## IV.   DISCUSSION

COBA has advanced four theories as to why HHS's determination that the Fund's prescription drug coverage is not an "excepted benefit" should be overruled.  *First*, COBA argues that HHS's determination rests on an arbitrary and capricious construction of "excepted benefits," as defined by the statute.  *Second*, COBA argues that even if HHS's construction of "excepted benefits" is correct, HHS is empowered to promulgate new regulations consistent with the purpose of the ACA, and it should have exercised this authority to "exclude the Fund from annual limit elimination," given that the Fund is clearly "not the intended target" of that reform.  *Third*, COBA argues that the prohibition on annual limits applies, by the statute's plain terms, only to entities that are both "group health plans" *and* "health insurance issuers" — and because the COBA Fund is only a group health plan, it is not subject to the prohibition.  *Fourth*, and finally, COBA argues that HHS's determination violates the Tenth Amendment.  Because this final argument was not addressed by COBA in either its opposition brief or its sur-reply, it is dismissed as abandoned.[36]  The remaining three arguments are addressed below.

---

[36]     *See, e.g.*, *Kellman v. Metropolitan Transp. Auth.*, 8 F. Supp. 3d 351, 370 n.7 (S.D.N.Y. 2014) (deeming plaintiffs to have abandoned claims that were not mentioned in an opposition brief); *Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 280 (S.D.N.Y. 2011) (same).

### A.   HHS's Classification of the Prescription Drug Benefit Was Not Arbitrary or Capricious

As explained above, HHS concluded that the Fund's prescription drug benefit was not an "excepted benefit" by considering each type of excepted benefit set forth in section 2711, as defined by accompanying regulations.  In broad strokes, HHS's analysis had two components.  *First*, HHS concluded that the prescription drug benefit does not qualify as any of the benefits specifically enumerated under the "non-health benefits" or "limited excepted benefits" categories.[37]  In this case of "non-health benefits," this determination was particularly straightforward.  As HHS put it, because "[t]he COBA prescription drug benefit is a type of health coverage," it does not fall within the category of benefits "that are generally considered not to be health coverage."[38]  In the case of "limited excepted benefits" — which, unlike the first category, generally *are* a form of health coverage — HHS's analysis proceeded by explaining why the prescription drug benefit is unlike any of the benefits enumerated in the statute and accompanying regulations.  *Second*, HHS determined that the prescription drug benefit is not "provided under a separate policy, certificate, or contract of insurance," from which it follows, under HHS regulations, that the prescription

---

[37]     *See* Lorenz Letter at 3-4.

[38]     *Id.* at 2, 3.

drug benefit cannot be a "non-coordinated excepted benefit" or a "supplemental excepted benefit."

COBA takes issue with both components of HHS's analysis. *First*, although COBA acknowledges, as it must, that the prescription drug benefit does not qualify as any type of benefit enumerated within the "non-health benefit" category or the "limited excepted benefits" category, it argues that the prescription drug benefit is *similar to* the benefits enumerated in those categories. Therefore, according to COBA, HHS was obligated — pursuant to the residual clauses of the respective sections of the statute — to classify the prescription drug benefit as a "non-health benefit" or a "limited excepted benefit."

This argument misapprehends the relevant standard of review. The Supreme Court (as well as the Second Circuit) has been crystal clear that an agency's failure to act is subject to judicial review only when the agency "[was] required to take [action]."[39] Here, HHS is authorized to specify "other similar" benefits that should be afforded the same treatment — *i.e.*, exemption from the ban on lifetime and annual limits — as afforded to the benefits explicitly enumerated.[40] But the fact that HHS is *empowered* to classify unenumerated benefits as "similar"

---

[39]     *Norton*, 542 U.S. at 64.  *Accord Quarantillo*, 541 F.3d at 89 n.13.

[40]     42 U.S.C. § 300gg-11(c)(1)(H), 300gg-11(c)(2)(C).

to those enumerated does not mean HHS is *obligated* to do so.  Ultimately, HHS considered COBA's argument that the prescription drug benefit is similar to benefits enumerated in the statute — and it rejected that argument.  Because that decision fell within HHS's discretion under the ACA, it is unreviewable as a matter of law.

     *Second*, COBA argues that HHS was wrong to find that the prescription drug benefit is not "provided under a separate policy, certificate, or contract of insurance."  COBA concedes that no "separate policy" or "contract of insurance" exists — because the Fund is self-insured, which means that the prescription drug benefit is paid directly by COBA, not by a third-party insurer. Nevertheless, COBA maintains that the self-insurance scheme here is "acutely analogous to a contract for health insurance,"[41] and that HHS therefore should not be allowed to "hide behind [] narrow definition[s]."[42]  Rather, HHS should be required to treat the prescription drug benefit *as though* it was provided under a separate "contract of insurance," and therefore eligible (at least potentially) for exemption from the ACA's prohibition on lifetime and annual limits.

     Even assuming, *arguendo*, that COBA's premise is correct — that

---

[41]    Opp. Mem. at 18.

[42]    *Id.*

the self-insurance scheme at issue here is meaningfully similar to a separate insurance contract — COBA's legal conclusion does not follow.  No matter how "acute" the "analog[y]" between the scheme here and a "contract of insurance," analogies do not upend agency decisions.  Indeed, far from "hiding behind [] narrow definition[s]," HHS has been clear and forthright about why it finds COBA's analogy unavailing.  In short, HHS distinguishes between benefits underwritten by *self*-insurance — *i.e.*, benefits paid out directly by the entity offering the benefit, causing that entity to assume the financial risk associated with the benefit — and benefits underwritten by insurance contracts that allocate financial risk to a third-party.  The purpose behind this distinction, as HHS has explained, is to ensure that supplemental benefits are "issued by an entity other than the entity that provides [] primary coverage."[43]  Otherwise, self-insured entities could effectively circumvent the ACA's requirements by offering two forms of coverage — one "primary," the other "supplemental" — and allocating a greater share of benefits to the latter, which, because it is supplemental, could (theoretically) be exempt from the ACA's prohibition on lifetime and annual limits.

---

[43]     Program Memorandum from Department of Health and Human Services Regarding Supplemental Insurance Coverage, Ex. to HHS Admin. Record, at 2.

Here, HHS found — and COBA does not dispute — that "the prescription drug benefit is self-insured . . . [because] the City of New York contributes [to the Fund]," and those contributions are used "to pay [] prescription drug claims."[44]  This means that "the Fund has taken on the risks of providing [supplemental] coverage instead of providing the coverage through insurance,"[45] which in turn means that there is a risk of circumvention if the prescription drug benefit (or any other aspect of the COBA Fund) is deemed supplemental.  Given the cogency of this concern, particularly in light of the deference that this Court must afford agency decisions, HHS's determination is not arbitrary or capricious.

### B.    HHS Had No Obligation to Promulgate New Regulations in Order to Accommodate COBA

Alternatively, COBA argues that even if HHS properly declined to classify the prescription drug benefit within any *existing* category of "excepted benefit," it nevertheless erred by failing to create a *new* category of excepted

---

[44]    Lorenz Letter at 4.

[45]    *Id.*  COBA's only attempt to fend off this conclusion is to argue that, here, "the Fund's prescription drug program is issued by a separate entity from the entity that provides the primary coverage," because the prescription drug benefit is administered by COBA, whereas primary coverage is administered by the City. Opp. Mem. at 18.  What HHS found, however, is that functionally speaking, COBA *is* the City — because its operations are financed by the City.  The formal distinction between COBA and the City therefore does little to defuse concern about circumvention.

benefit — pursuant to its general authority to issue "such regulations as may be necessary or appropriate to carry out the provisions of [the PHSA]."[46]  In COBA's view, this decision amounts to a "failure to regulate," which qualifies as a reviewable agency action under the APA.  For support, COBA leans primarily on *Massachusetts v. EPA*, where the Supreme Court held that the EPA's "refusal[] to promulgate rules" related to carbon emissions was "susceptible to judicial review," albeit under a "highly deferential" standard.[47]  Here, COBA believes that HHS's failure to regulate cannot even clear this low bar — because it is obvious that the absence of an exemption, insofar as it threatens to bankrupt supplemental programs like the COBA Fund, subverts the goals of the ACA.

This argument misreads *Massachusetts v. EPA*.  There, the issuance of regulations was mandatory under the Clean Air Act ("CAA"), which meant that the EPA's inaction flouted a clear directive from Congress.[48]  Not surprisingly, that

---

[46]     42 U.S.C. § 300gg-92.

[47]     549 U.S. 497, 527-28 (2007).

[48]     Specifically, the statute reads, "The [EPA] Administrator *shall by regulation prescribe* (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare . . . ."  *Id.* at 506; 42 U.S.C. § 7521(a)(1).

decision was subject to review — and ultimately overturned.  Here, by contrast, the

PHSA merely *permits* the issuance of regulations — but it does not *require* that

result.  Where the CAA used the word "shall," the PHSA uses the word "may."

For purposes of agency review, that difference is dispositive.  As the Second

Circuit recently explained, the holding in *Massachussetts v. EPA* is limited to

circumstances where a statute contains an "unequivocal imperative," directed

toward the relevant agency, to issue regulations.[49]   When, as here, the statute

"leaves action dependent upon agency discretion," *Massachussetts v. EPA* is

inapposite.[50]  Accordingly, COBA's argument fails.

### C.   COBA's Statutory Argument Is Untimely

Finally, in a last-ditch effort to save its case, COBA proposes — for

---

[49]     *Natural Res. Def. Council v. FDA*, 760 F.3d 151, 175 n.28 (2d Cir. 2014).

[50]     *Id.  Accord Reich v. Valley Nat'l Bank of Ariz.*, 837 F. Supp. 1259, 1292 (S.D.N.Y. 1993) (holding that the Secretary of Labor had no duty to promulgate regulations defining "adequate consideration" under the Employee Retirement Income Security Act of 1974, because the relevant statutory language provided that "the Secretary may prescribe such regulations as he finds necessary and appropriate" — and that the failure to promulgate regulations was therefore unreviewable) (citing 29 U.S.C. § 1135); *Missouri Coalition for the Env't Found. v. Jackson*, 853 F. Supp. 2d 903, 912 (W.D. Mo. 2012) (holding unreviewable — because discretionary — the EPA's decision not to engage in rulemaking related to water quality standards, even though the record contained evidence suggesting that the absence of revised standards was impeding states' compliance with the Clean Water Act).

the first time in its opposition papers — a novel reading of section 2711.

According to COBA, under the statute's plain terms, the prohibition on lifetime or

annual limits only applies to entities that are both "group health plan[s] *and* []

health insurance issuer[s]"[51] — and the Fund is only a group health plan.  In

advancing this argument, COBA concedes that HHS regulations "state that the

annual limits elimination applies to 'a group health plan, *or* a health insurance

issuer.'"[52]  But "regulations, in order to be valid, must be consistent with the

[underlying] statute."[53]  In other words, statutes trump regulations — and the Fund

does not fit within the conjunctive formulation ("group health plan[s] *and* [] health

insurance issuer[s]") used in the statute.

      Had this argument been timely made, I would be disinclined to accept

it — for COBA's position, though faithful to the terms of the statute, would let

what appears to be a drafting error frustrate the operation of an intricate and highly

technical statutory scheme.[54]  But the argument was not timely made.   To entertain

---

[51]     Opp. Mem. at 12.

[52]     *Id.* (citing 45 C.F.R. § 147.126(a)(2)(i)) (emphasis in original).

[53]     *Decker v. Northwest*, 133 S.Ct. 1326, 1334 (2013).

[54]     Although the Government makes a number of arguments to this effect, the most forceful is that under COBA's interpretation of the statute, the set of entities bound by the prohibition on lifetime and annual limits would be a null set — there *are no* entities that are both group health plans and health insurance issuers.  "[COBA's] theory, therefore, is impossible under the statute."

it, therefore, would run the risk of prejudicing the Government — and more importantly, of rewarding COBA for what is likely legal gamesmanship. COBA had ample opportunity to develop this statutory argument at earlier stages in the litigation. It did not. I decline to consider the argument now.[55]

## V.    CONCLUSION

For the foregoing reasons, the Government's motion is GRANTED, and COBA's motion is DENIED. The Clerk of the Court is directed to close Dkt. Nos. 30 & 35, as well as this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 4, 2015

---

Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment at 15. *Cf. King v. Burwell*, 135 S.Ct. 2480, 2483, 2489 (2015) (explaining that although the ACA "contains more than a few examples of inartful drafting," its provisions should be construed "in [] context and with a view to their place in the overall statutory scheme") (internal citations omitted).

[55]      *See Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (holding that it was proper for district court to disregard a claim that had not been asserted until the plaintiff's brief in opposition to summary judgment).

**- Appearances -**

**For Plaintiffs:**

Howard G. Wien, Esq.
Koehler & Isaacs, LLP
61 Broadway
New York, NY 10006
(917) 551-1300

**For Defendants:**

Rebecca S. Tinio
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007
(212) 637-2774